15-1461 at L. Global TelLink Petitioner v. Federal Communications Commission at L. Mr. Meg Singhani for Petitioner, State of Oklahoma. Mr. Kellogg for Petitioner, Global TelLink. Mr. Gossett for the Respondent and Mr. Schwartzman for the Intervener. Good morning, Mr. Meg Singhani. You may proceed. Thank you, Your Honor, and may it please the Court. States and local governments, as a matter of correctional policy, have decided to provide inmate calling services as a privilege to inmates. But with that privilege comes real public policy risk, not only monetary costs to jails, but also threats to public safety, both inside and outside the prison, because calling services are used for nefarious purposes, such as smuggling drugs, planning murders, and intimidating witnesses and judges. The states have chosen to balance those risks with certain public policy benefits, such as funding security measures and inmate welfare programs through inmate calling services as a matter of state and local correctional and budgetary policy. The Commission has never shown that it has the unambiguous authority to upset that policy balance by attempting to limit the revenue states receive from inmate calling services. But it's clear from the record and the briefs that the core purpose of this regulation is to limit the funds states and sheriffs receive through ICS and their effects on inmate rates, because in the Commission's view, the policy balance that was struck by local and state officials is illegitimate. The Commission purports to make that judgment based on Section 276 of the Telecommunications Act. But Section 276 gives the Commission only the power to ensure that all pay phone providers are fairly compensated for each and every call. It gives no authority to regulate... Counsel, I'm a little puzzled. You're arguing as if the letter from the Deputy General Counsel will never appear. Your Honor, while we absolutely agree with the letter, and that the... Well, isn't the interesting question before us is what is the legal effect of the government's refusal, not only refusal to argue, but an abandonment of the position whereby 276 can be interpreted to include states? As much as I would like to say that that moves the litigation and that the court should strike down this rule altogether, unfortunately, I don't think the case law supports the idea that the Commission's legal position taken in litigation undoes the effect of a regulation. So I think what the court instead should probably do is hold the case in abeyance and let the Commission act to revise the regulation based on their new legal position, because I can't imagine that the Commission would want a knowingly illegal regulation still on their books. Can you point out... You mentioned costs of the state, security. I guess security was the main one that you emphasized. There is in the record some evidence that in fact the IHS providers take care of the security. Where should we look in the record for information about the scope of the cost that the states incur? I couldn't find items about that. I could point you broadly to specific pages, but let me tell you just broadly. Pages 988 to 1149 in the joint appendix are a series of comments from both state and local officials that talk about the nature of the tasks that facilities perform that impose costs, but also the specific costs, including JA1047, JA1068-70, JA1089, JA1148, and 1102-07. Those detail monetarily dollar and cents figures, those costs. But we should also remember that the costs are not just monetary costs for improving the security, for mitigating the security risks caused by ICS. How would those, though, affect the price? They affect the price because we've decided to balance those risks with other public policy benefits, such as funding other inmate welfare programs and reduced recidivism and substance abuse programs. You can't take a green eyeshade accountant view to how the state makes those policy judgments, which is exactly why what the FCC has done here is completely wrong. I don't even understand that. I mean, are you suggesting that the prices are set at a level to suppress the amount of calling? No, not – To sort of generally decrease potential security risk? I don't even – No, that's not at all what I'm saying. What I'm saying is that if the state is going to take risks by providing inmate calling services to inmates, the state also has the right to balance those risks in another area by saying, well, we're going to use those revenues in addition to paying for security measures to pay for other things like substance abuse programs, vocational programs, educational programs, and things like that. And it's that public policy balance that the commission is completely out of its ken and out of its statutory authority to question. They can't just say, well, what are the monetary costs you impose, and then we're going to try to factor those into rates, because that ignores the other public policy weighing that the state and local governments have to engage in. Counsel, let me go back to my initial question. Sure. I realize that a regulation on the books cannot be dealt with finally except through a noticing comment that revokes the regulation. I'm not at all sure, however, that the letter that Mr. Gossett provided us doesn't have legal significance, and I'm a little surprised that it hasn't occurred to you yet. I think it has legal significance to the extent that this court should say that the case is potentially mooted, assuming that this court desires that the interveners not be able to make arguments on behalf of the commission. If we're at the point where there is no case... Actually, the interveners never even made the arguments that the commission has abandoned. That's absolutely correct, Your Honor. The interveners' arguments were about ancillary fees. So to the extent that this court deems that there is actually no case of controversy anymore because you don't have two sides with opposite legal positions, then I suppose at that point the case is moot. You still have issues. There's no question. There are a number of questions in the case that even assuming the most dramatic change, you still have some issues. I think that's right. Your issue is the intrastate issue. That's absolutely correct. So maybe those issues are mooted and not the whole case. I'm not sure that's even true. Anyway, let's take a look. If the petitioners prevail in their argument on the site commissions, the exclusion of site commissions, if they prevail, then what other issue are you pressing? Well, it's not just the inclusion of site commissions. Is there authority to impose intrastate rate caps at all regardless of whether they include site commissions or not? That hasn't been conceded in your view? We think it has been conceded by the commission. Well, if it's been conceded and for argument's sake, if they prevail on the exclusion of site commissions, then what do you have that you need to argue about? I see. If the respondents prevail on the petitioners, that would fully satisfy us if this court decides because they have conceded that they cannot include those intrastate rate caps that the order is therefore vacated with respect to the intrastate rate caps. Tell me again. I guess you've been trying to answer Judge Silverman and I'm not getting it. Why is it you think they may not have conceded it? No, we think they have conceded it. Have conceded what? That the intrastate rate caps, which the state and local government petitioners, that's our primary and only challenge, are unlawful. So you don't even get to the site commissions? We don't even get to the site commissions because they don't have the authority to calculate the cost to begin with. Yes. Because they don't have what? Say that again? They don't have the authority to impose intrastate rate caps so the manner in which they calculated those costs is an issue if they don't have authority to impose their rate caps to begin with. Well, that doesn't deal with the site commission issue fully. Oh, we think it does because if they cannot impose intrastate rate caps, then it doesn't matter how they decide to calculate the intrastate rate caps because they don't have the authority to do it. Now, unless you were talking about their intrastate rate caps. Right. Oh, in that case, yes, you're right, that we continue to believe that that is arbitrary and capricious. Okay. But do you even have an interest in that? We do, but we obviously think our interest is slightly lessened because we have less authority and the SEC has greater authority with respect to intrastate practices. The commission concedes, even before the letter, that it has no authority to regulate facilities. So are you effectively conceding that with respect to intrastate rates that the exclusion of site commissions was within the SEC's power? No, Your Honor. I'm conceding that they have the authority to impose intrastate rate caps, but we still believe that the exclusion of site commissions in totality, which they've now walked back even before the – I see my time has expired. Go ahead. Even before the letter, they've walked back in the reconsideration order saying, oh, no, we were wrong in completely excluding site commissions. Exactly. So I'm wondering why you're pressing that because they have taken account of that, of the cost that you mentioned in the reconsideration order, have they not? They've attempted to, but their method of taking account by doing the averaging methodology, like they tried to do with the provider cost, we still believe is arbitrary and capricious because of the variation. Wait a minute, wait a minute, wait a minute. They've abandoned the averaging, too. They've abandoned that, yeah. Counsel, you've got to watch. You're correct, Your Honor. They have abandoned that averaging methodology. And, again, to the extent that that ends the issue and this Court says, well, if they've abandoned it, then it must be arbitrary and capricious, then we agree, yes. Do you still mean to argue that with respect to interstate regulation, site commissions, if they're allowed to exclude as they presently propose to do, that would have an adverse effect on state interest? Yes. And explain? Because those site commissions obviously give us revenue, and that revenue is used, among other things. You're saying, de facto, even though they are not barring site commissions, it would have the effect of barring some. Is that what you're saying? Exactly. Not all, some. Right, because the level of the rate caps they set were too low for both intrastate and interstate. And I guess I want to clarify, they have abandoned the averaging methodology with respect to the provider cost? Price caps. Both, right. Well, I mean, once you abandon averaging cost, then you abandon price caps. Doesn't that follow us night to day, apathetically? I think it's actually the other way around. Once they've abandoned price caps, they've reprimanded the methodology by which they calculated those price caps. That's not exactly the way they did it. They didn't specifically say they abandoned price caps. They said they abandoned averaging of cost. Well, they made two concessions. One was they abandoned intrastate price caps. Right. And then... They abandoned intrastate jurisdiction. Right. And they also abandoned averaging of cost. Right. Now, if they abandoned averaging cost, it seems to me the price caps must fall, because that's what... These particular price caps must fall, yeah. What do you mean, these particular price caps? Well, in theory, they could have another methodology which wasn't arbitrary and capricious for interstate price caps. Yeah, if one had that will, she'd be a trolley car. But what I wanted to clarify was that that abandonment of the averaging methodology for the provider cost doesn't necessarily, but we think as a matter of reason it does, also abandon that the averaging methodology they used on the order and reconsideration, which is not currently before this court but has been stated. That's what I wanted to clarify. But there's a slight difference between the averaging methodology for the provider cost and for the facility cost, which they considered in the order and reconsideration. But we think that the reasoning of both is the same, and so, effectively, the concession this time around for the provider cost also... As I read it, I'm also not authorized to defend, and we are also abandoning. The commission lawfully considered industry-wide averages in setting the right caps, in the order. That's interstate, interstate, or any kind. That's correct, Your Honor. Okay. So, yeah, and all I'm saying is that the averaging methodology for facility cost, they didn't actually do in this order. They only did it in the order on reconsideration when they decided that they were going to include... Is that before us now? No, it's not, and that's what I'm saying, Your Honor. Sorry. Please. It's confusing enough. Again, I see my time has expired. If there are no further questions... Thank you, counsel. Thank you. Thanks, Judge Gillert, and may it please the Court. I want to begin by clarifying the scope and consequences of the FCC's concession, because it really kills the entire order in this case. They've essentially admitted that 276 itself is not 201 for pay cuts. It doesn't give them plenary authority. Now, 201 does give the FCC plenary authority over interstate bills. I don't think that's fair. I didn't take the concession to do that part. I thought the concession was that 276 does not provide authority to cap intrastate rates. Correct, and does not allow the methodology used in this case. And also that the averaging doesn't work, so therefore the price caps don't work. But the consequence of saying that 276 is not essentially 201B for intrastate payphone calls means they have to fall back on 201 for their rate-making authority. For intrastate? No, they can't. You mean for two... For interstate. Are you saying 276 has no authority for intrastate? The point about 276 is that it does not provide... Are you saying 276 has no authority for intrastate? I'm saying it has the same level of authority for intrastate that it has for intrastate. No, it has no authority under intrastate according to the commission's position. No, they said they do not think they can set price caps on intrastate calls. But, of course, this court has a whole series of decisions dealing with intrastate calls under 276 in the context of ensuring fair compensation. What 276 is is a no-free-calls statute, as this court and the Supreme Court have specifically said on multiple occasions. It was designed to allow payphone competition by eliminating subsidies for bell companies and preempting state regulation that prevented collection of compensation on dial-around and 800 calls. And that's still in place. What the FCC is saying, and correctly saying, is that it's not a rate-making provision. Oh, okay. I see your point. Now, this goes back to your basic point, which is the proper interpretation of 276 is to protect the providers, not to restrict them. And one of the consequences... And the Supreme Court is different from 201. Correct. Is that the point you were trying to make? Yes, that is the point I was trying to make. And one of the consequences of that is that they have to fall back on 201 in dealing with intrastate calls. And 201 has inherent limitations because it only applies to telecommunications services. So it does not cover things like video visitation or VoIP calls or other enhanced services, which the FCC is purporting to regulate now. It also does not apply to caps on ancillary fees for things like financial transactions, which the FCC itself has said under 201 are not covered in its granting order and other places. I'm confused about that. I thought on the ancillary services, the FCC relied on both 201 and 276. And 201, after all, has language in connection with, which could be interpreted, perhaps. Yes, the FCC did rely on both. And I'm saying the consequence of their concession about the nature of 276, that it is not a price cap provision, would also apply to... No, I didn't... I understand their concession on 276 to be that it doesn't apply to the state. And their separate concession, whether it's under 276 or 201, is you can't use averaging at all. So, therefore, price caps don't work. I don't know what you're doing. You're doing something else with it that I don't quite understand. Well, I think the concession is actually more subtle than that. Oh, boy. I hate to add complications, but 276 does apply to interest rate calls, but it does not give plenary rate-making authority. It does not allow the FCC to turn it into a section 201. I understood that argument. Okay. I'm just trying to explore the consequences of that. If it's not a rate-making and rate-tapping statute, then their ancillary fees... But what about the administrative law problem? Okay. As a matter of classic administrative law, this case is really strange. As a matter of classic administrative law, an agency must revoke a rule unless there's a determination under certain circumstances that the rule is illegal. And you could revoke by saying, good cause to avoid notice and comment. But typically, you'd have to go through notice and comment. So that's essentially what the counsel for the states made that point out. However, there may well be other legal significance to the FCC's letter. Do you see any others? I agree. There is additional legal significance that it's an added reason why this court should vacate the order because the FCC is no longer defending it. And not only no longer defending it, but has told the court that they consider it unlawful in critical respects. But vacate the order. The rule still remains in effect until the FCC goes through a notice and comment to revoke it? Correct. Until this court vacates the rule. No, wait a minute. That doesn't make sense. Why would we vacate the rule? We would vacate the rule for the reasons given in our brief. It's unlawful. Well, I'm asking about the letter. What does the letter have to do with it? The letter says that the FCC now agrees with us and with the states that the intrastate price caps are unlawful and that the cost methodology used in the order is also unlawful because it puts half of all pay phones underwater. So your point of administrative law is if an agency concedes that its position with respect to a regulation is illegal, joining the petition, then the court should vacate that portion of the rule on which there is an agreement without having the agency go through notice and comment to revoke? The court can and should. The court has declined to hold this case in the veins. It's before the court. The validity of the order is before the court. The FCC no longer defends it. We have laid out in our briefs the reasons we consider the order to be invalid, and therefore unless the FCC stands up and says now please hold it in abeyance because we want to pull it back, the court should vacate and remand. What if we thought the order and the rule were valid, notwithstanding the FCC's position? Well, that's why I'm here to convince you otherwise. Right. But we have legal authority to say, fine, we don't care. You have legal authority to do that. But certainly at the very least, the agency's failure to defend it, it would be quite extraordinary for the court to then say, well, even though the agency thinks the order is unlawful, we're going to go ahead and affirm that order. Another way of looking at it, you're saying there is an attempt to look something like voluntary secession, except they can't meet that standard because they haven't eradicated all the effects. They can go back and do it again. And so you still want to pursue the fight that you first brought. Absolutely. Because it's unlawful. Exactly. So the order is there. It's of some interest. Maybe it looks like a voluntary secession, except it can't possibly satisfy the requirements of voluntary secession. So your argument is it's here, it's unlawful, it's interesting that they won't defend it. We're happy to have that. We still can convince you it's unlawful. That's correct. All right. And pursuant to that, I'd like to turn to your question about the squeezing out of site commissions. Well, let me pursue another point. I'm surprised you haven't made it. One of the fundamental arguments that the FCC makes to defend the order, which they now want to do, with respect to the extension to the interstate, is Chevron. Right? Because they interpret 276 to give them authority to cap rates. Your view, and the state's view, is no. 276 is only designed to enhance the prospect of the providers, as against Bell Telephone. That is correct. Correct. So there's a fundamental difference as to its purpose. The key argument, as I see the FCC making, is, well, it's ambitious, and therefore we're entitled to Chevron debt. Now the interesting question comes, well, wait a minute. Does the agency get Chevron deference after it abandons its position, based on the ascension of two members of the FCC, who are now a majority, like Chairman, who descended on this very ground? So, therefore, isn't it correct that there would be no Chevron deference given to the old... I think that is correct for two reasons. One, because they're not defending the order. But second, because as this Court noted in the Illinois payphone case and the New England payphone case, that 152B's presumption negates, is a finger on the scale, in terms of how 276 should be interpreted. And our whole argument before the Court today is 276, it's an unreasonable reading to allow them to use it as a rate-making statute. But also, even more important, the exclusion of site commissions, which is a legitimate cost that we are forced to incur, cannot be ignored in setting rates. They're not exactly excluding site commissions per se. They're saying, tell us what your costs are, and that you had every opportunity to fill the record with evidence of costs, and they can't get them into account. We filled the record with evidence of our costs and the costs of commissions. For example, what we showed is that oftentimes, say, the rate's 22 cents a minute, and we pay a 50% commission, so we net 11 cents a minute, which may be, in certain locations, an accurate reflection of our costs. But if we're reduced to collecting 11 cents a minute and have to pay a 50% commission, then we're going to be underwater. And the SEC admits that. It admits that once you take commissions into account, we are underwater. And so what it does is it's looking at this as any economist would, in a dynamic way,  won't be able to extract site commissions, and so you'll get more of what you get. This is a very critical point, yes. Yes, it is. The squeezing out of commissions is something that maybe the FCC could do under 201 for interstate calls, but it would have to do so directly by preempting the costs imposed by the state. Why? Why do you say that? Well, the FCC has never found market failure in terms of... Now, why do you say they can't do it the way they did it? Why do you say they have to preempt the state? Because for two reasons. First of all, it's ignoring the legitimate cost, which is built into our existing contracts, and they can't ignore the existing contracts and say, well, it'll... Why can't they say it's an illegitimate cost, which is essentially what they've said? Because it clearly is a cost that we pay, just like a free tax fee. With our argument, it's a market failure, it's an illegitimate cost. But they've never declared these site commissions unlawful, right? They haven't held the site commissions... The thrust of your argument is they want to have their cake and eat it, too, and you're saying, look, you want to go after site commissions and go ahead and do it, but you haven't done that, so it's bogus for you to now argue, well, you'll somehow get squeezed by the market. Even though you have it lawfully in the contract, they don't say it's unlawful to have it in the contract. They don't say the state laws requiring it are preempted. They're just saying, we'll see if we can squeeze you without taking this on. Is that your argument? Correct. Correct. They're trying to squeeze them out and make them impossible to collect. As opposed to saying it's impermissible. Without preempting. And if they want to preempt, fine. We actually don't care about the site commissions. We just don't want to have to pay them but not be able to collect them. But the states do, and they're also participating in the case. They're saying, we have some costs in some cases, and we need to collect them, and so the FCC is trying to do less and interfere less and say, you guys work it out, but we're going to deal with this market failure. If we've seen you demonstrate certain costs, we're going to raise the rates a little bit to compensate for that. But we also have seen a lot of gravy coming out of the highs of these rates, and that's not fair, right? Well, the gravy is going to the prisons and jails, not to the ISPs, because the FCC has never found that we are not vigorously competitive with one another. The gravy is going to the mayor's office. You know, I think that is irrelevant in terms of whether it's a cost to us. In other words, the way in which the states want to use the money, as far as you're concerned, is irrelevant. If they want to use the money to buy jet planes, to run the governor around the country, that's fine. Is that correct? Well, yes and no. Yes for purposes of this case, because the FCC has not taken any steps to say, we're going to impose restrictions on how they can use this money. All they're saying, and maybe they can do that. The states would, I assume, disagree with that. I'm not sure we take a position on that. The key point is they haven't taken any steps to preempt these commissions or to limit their commissions or to restrict how they can be spent. And if they want to do that, let them go ahead and provide an APA justification of their authority and their reasoning to do so. But as Judge Edwards pointed out, the current state of the record, it's a contradiction. They say, well, these are interfering with our federal policy, but we're not going to preempt them, but we're going to try to make them impossible, which is the essence of preemption. So they want to have their take needed too, and that's something they can't do. And that's why the whole order should be thrown out of this. Tell me where you think the record is, assuming there's an issue on the site commission. And how should I think about it now with the reconsideration order? What's your position now with the reconsideration order and their claim? Well, of course, the reconsideration order is not before the court. I understand. On the other hand, it doesn't actually matter because all the reasoning, all the pillars of the reconsideration order are in the 2015 order, specifically the assertion of jurisdiction over interstate rates, the assertion of authority to cap ancillary fees, the decision to exclude site commissions, and the industry average rate setting methodology. So wait, are you trying to put site commissions in simply a simple category as a legal proposition you cannot exclude? We think you've simply taken a position we will exclude site commissions, and that's impermissible, or what? Our position is if they want to preempt state statutes, regulations, and policies requiring site commissions, they need to do so directly and openly and provide an APA justification. What they cannot do is say, we're not touching it, we're not interfering with preemption. Why do you gather the commission did not do the straightforward preemption? You know, I think, A, they were concerned about their authority, and B,  whether they had legal authority to preempt. Why? You told me before that they had specific authority to preempt. They do to the extent of Section 276. But Section 276 is actually a narrow statute with a specific purpose that assigned very specific tasks to the FCC and a nine-month deadline for doing them. I'm not sure I follow. Well, so you're saying they should have preempted, but if they had done that, and if that harmed your client, you would be here arguing that they don't have authority to do that. You can argue that here because you're not representing a state. What I'm saying is exactly the inverse of that. I'm saying what they can't do is subrose a preempt without actually asserting the authority to do so. Why would that make a difference? It seems like what they're doing is using the same authority that they would have to preempt, assuming that they have that authority for the moment, but just for the purpose of the question. And they're trying to do it in a way that leaves a little more flexibility to the state. They're trying to respect the state's sovereign authority and the state's prerogatives in charging legitimate portions of their costs in providing cell phone access to prisoners. Because that's not exactly what they say if you look at Paragraph 140 of the order. They say we are not preempting. We are not interfering with the collection of site commissions. We are not telling states how they can spend this money. But we're going to make them unlawful, effectively unlawful. Which would have the effect of eliminating site commissions. I mean, that's the effect of what they're trying to do, right? What they, in effect, are doing is eliminating site commissions. Right. But let me make sure I'm on this, at least I understand it. With respect to preemption, I think implicit in your argument is in doing the way they're doing it, there may be some legitimate problems that they will have depending upon the reason for preempting. And they avoid that by doing it this way. Some reasons might be totally legitimate, depending upon what the state's doing with the money. Some reasons might be absurd and the commission would have no ground to stand on. They avoid all of those questions by doing it this way and claiming it's just the market. And they know they're trying to kill site commissions, right? Am I understanding your position? They do, yes. They admitted that in their brief. They did not in the order itself in the brief. They said the whole purpose is to squeeze out and make site commissions impossible. And that leaves us in an untenable position, particularly with regard to existing contracts, which under this court's decision and the associated distributors. I want to ask you a question, though, which I want you to listen very carefully. Are you taking the position that the FCC had legal authority to preempt the site commissions? No. So your argument is what they did is illegal because they didn't do X. Well, after all, X is illegal, too. So there is no way they can affect site commissions. No, I'm not saying that. I'm saying that the path that they took in this order, which was to make it impossible to recover site commissions, is doubly illegal. It's illegal because it's inconsistent with our existing contracts and will put us under water, as they admit. And it's also illegal because if they want to take that path, they have to preempt and they claim not to be preempted. Wait a minute, but you also said they don't have legal authority to preempt. No, you see. Are you arguing now, are you conceding they really had legal authority to preempt? They just hit the wrong button. I think if they wanted to preempt, it would be a very complicated impossibility argument under 201 before they could get to intrastate calls at all. Are you saying it would be illegal to preempt site commissions? I'm saying, I'm not saying that. I'm not taking a position on whether ultimately the FCC will have the authority to preempt or not preempt site commissions. Mightn't it depend on what the site commission is set up to do? Could that affect it? That could affect it. And there are other factors that could affect it as well because 276 is not a roving mandate to rate set for calls, which means they have to rely on 201. And 201, Judge Pillard, the impossibility exception is if you have to affect intrastate in order to regulate properly interstate. And they haven't tried to make any such finding. So let them do so on remand, and if they can do so and they can defend it in this court, that's fine. Because I'm not up here to make a brief for site commissions. I'm up here to make a brief for adequate cost recovery for clients who are providing a valuable service in a very competitive market. Thank you. Thank you, Mr. Collins. There's one other thing. Oh, wait. You had a separate preemption argument. If they've lost on the intrastate issue. Yes. Is that preemption argument still before us? If they lose on the intrastate issue because 276 doesn't allow them to do general rate making or preempt site commissions, then they would have to rely on 201B for their authority. And as I said, they couldn't get to intrastate unless they use the impossibility. They could use interstate. They could do it for intrastate, but then they end up with a huge mess because the costs are so variable in each institution, given whatever equipment demands they have, whatever service demands they have. And so just sort of setting rates. That is a question that occurred to me. Is it possible, even with respect to the ancillary services, assuming 276 cannot be used as a basis to cap intrastate rates, is it possible to divide up the ancillary services? At least some can, and it seems some would be difficult. Have you looked at that? No, I think the ancillary services caps would have to fall in their entirety. Why? Because they haven't attempted to lift them out. They wouldn't have to be remanded. They would have to be remanded. Because if there was no authority to use 276 to reach the states, then there would have to be an allocation, which would be very difficult for the court to do with respect to what is allocated to interstate and what is allocated to intrastate. Absolutely. I see your point. Let me just talk about your basic position on the rates. You are not arguing that the SEC lacks authority to set rates for intrastate calls. You're just saying that they had to be set at a level that's high enough to cover the highest existing, the most expensive call under the existing date of affairs. Is that right? We would have to set the rate at the very highest call and then use that rate across the country. Wait, what are you talking about? Inter or intramural? We're talking about interstate rates. Intra. Oh, you said intra? Yeah, intra. Because you said that they're free to set generally applicable rates. Well, they're able to set rates for, in your view, adequate compensation or fair compensation. They were charged in the 1996 Act and in Section 276 with ensuring payphone competition by essentially it's a no free calls provision. Wait, no, I understand. I thought your position was that they're free. This is from your reply brief. The SEC is free to adopt generally applicable rates or rate categories so long as those rates ensure fair compensation for each and every call. Each and every call, that's language from 276. So I took that to be referring to intrastate rates, and I'm trying to understand that aspect of your position because you're saying the SEC would need to determine the maximum possible cost of a call under the existing state of affairs and take that as the fair rate so that everybody has to get top dollar for every call under the existing state of affairs. No, that's not what I'm arguing. It's consequences of the FCC taking the language of 276 out of its context, if I can provide a little history. What the FCC has always said is if there's competition or a market-based rate, then we don't need to do anything because that ensures adequate compensation. In the inmate payphone, we have a contract with the prison that sets the rates. So we're not going to enter into that contract unless they're compensated. So there's really nothing for the FCC to do with the consequence of those rates. The problem is they've read 276 as a general rate-making provision, and that puts them into terrible problems because the costs are so variable within institutions and their aggregate cost methodology, average cost methodology, leaves half of all payphone calls and half of all payphone providers underwater, which can't be consistent with the language of 276, even as they read it, giving them expansive authority. Let me make sure I'm clear on this because I was shocked by the initial question in your answer initially, but I think you've clarified it. The position is clear. 276 is not a rate-making provision. Correct. Pursuant to which the commission goes in and sets rates. Is that right? That is correct. All right. Thank you. Thank you, Mr. Fowley. Mr. Gossett. Thank you, Your Honors. David Gossett for the FCC. As this Court is aware, I'm not authorized to defend or otherwise address the commission's assertion of jurisdiction to cap interstate inmate rates. But given the Court's questions of Petitioner's Counsel, there are two main issues that I would like to address, ancillary charges and site commissions. Wait a minute, Counsel. I didn't read the letter. It's saying you're not authorized to address. It says you're not authorized to defend and you are abandoned. It seems to me implicit in that you're authorized to address the significance of what you have done. I'm not. And as you can see, I have various questions as to any of the significance. For instance, one question is why did you have delegated half your time to an intervener who did not raise the issues that you're abandoning? Why don't you raise the ancillary issues? I will leave to him to defend whether he's raised or has jurisdiction to defend any other of the issues. You delegated your time to somebody who did not raise the issues you're abandoning. We have given Mr. Schwarzman time to defend any aspect of the order that he sees fit to defend and that this Court will listen to him to defend. The question whether that's adequate is one for the Court to decide. I'm sorry. What about your view as to the significance of the commission, the new commission, abandoning both the 276 breach to the states and the average? One of the things that I find difficult to understand is what you are remaining. What's left for you to argue? The primary thing that I think this Court should address, and the reason to address one of your previous questions that the commission did not take this case into abeyance, is the commission's reforms with respect to ancillary charges, which we think are properly presented in this case and which the commission wants to defend. Particularly the ancillary charges. Particularly the ancillary charges. That ties into the fact that, essentially, all the other main arguments are ones that we already had argued this Court shouldn't be addressing because they're tightly tied to the actual rate caps and the methodology of setting those rate caps, and that all changed in the order of reconsideration, which is not before this panel. It's the ancillary charges that we believe this Court has jurisdiction to address and should address. What about the site commissions? On site commissions, we do not think this Court should address it because in the order of reconsideration the commission significantly changed its treatment of them and allowed that there were reasonable facilities. The previous rates did not afford adequate compensation for reasonable costs actually incurred by facilities, but if the Court disagrees... Wait a minute. Under the reconsideration... In the order of reconsideration. ...site commissions could be taken into account, at least partially? In the order of reconsideration, the commission determined that facilities do have real costs of inmate calling services that were not adequately addressed by the rate caps in this order. And that would be site commissions? Site commissions is... I see another way to say it could be charges the site charged the provider, whether they're site commissions or not. The rates were raised significantly in the order of reconsideration based on evidence that facilities had real costs that were related to site commissions. The commission continued to believe in that order, and this Court theoretically could reach the general question whether charges unrelated to the reasonable costs of facilities are appropriately included in the rates. And the commission held that charges unrelated to a facility's reasonable costs are not compensated. That's in the 2016 reconsideration order. That was decided in this order and affirmed in the 2016 reconsideration order. So I would suggest that the Court should defer all questions about that to the 2016 order, but... The site commissions. All questions about site commissions. Okay, I got that. So I think I'm making progress. But you say, then, we do have before us the ancillary rates. Now, what bothers me is how the devil do you distinguish between ancillary rates that are attributable to interstate and ancillary rates that are attributable to intrastate. Isn't that a remand, question two? Respectfully, I don't think one needs to remand on that. The Court asserted jurisdiction over ancillary charges based on Section 201 in addition to Section 276. And the reality is that the vast majority of these charges that we're calling ancillary charges are mixed-use charges that are not specific to a specific call. So, for example, an account setup fee or the credit card processing fees and such are not about a specific call and, therefore, fall within the commission's jurisdiction to regulate as in connection with the interstate rate tax. Even if they're used primarily for intrastate calls? Because they are related to the interstate call, the commission has jurisdiction to regulate them. Has FCC focused on that question? In paragraphs 193 to 196, the commission addressed inter- and intrastate jurisdiction. As I read it, the commission did not say that these charges, which we think are excessive, we think we have authority under 201 to stripe them down, even if the majority of the charges are for intrastate calls. The commission did not address that because at the time the order was... Well, that leaves open a question because some of the charges look to me, ones you can allocate, you can divide, and others it looks like it's harder. To the extent the court determines that we haven't addressed that, that might be an appropriate opportunity for a remand without vacate or under-generate. But on the specifics, I think the way I look at this, with the exception, with the possible exception that I'll get to of these, what they call single-use charges, all of the rest of these just are charges about... They're about setting up an account. They're about getting billing statements. They're about sort of putting money into the account. And take a step back. The reason the commission regulated ancillary fees in this order is because these were a problem even before the 2013 order. The providers created an alphabet soup of these. But then there was specific evidence in the record that after the commission capped interstate rates in 2013, companies attempted to circumvent those rates by creating these caps. So these are directly related to our interstate rate caps that were set in 2013, and therefore our regulation of them falls firmly within Section 201 because it's that. And so that's the general reason why we did what we did here. To avoid, as you said, a remand without vacater under 10 rate. I mean, that logic is clear in the record, that the, you know, fat you pulled out of the interstate rates in 2013 led to it being packed back in by the providers. I don't think the court needs to remand on that. I was just saying if the court disagrees on that, it is a situation where certainly no more than remand without vacater would be appropriate. But I think that since it was directly tied to the- We could remand without vacater. That's what I said. Sorry, I thought I was- I'm sorry. I'm fighting a little bit of a cold. So if I wasn't clear, I meant to say remand without vacater on that issue certainly. So on the single call services charges, I think that's a question that the court just shouldn't address in this case because, of course, the rates for the single call services ancillary charges directly refer to and incorporate the overall rate caps, and the rate caps aren't before this court. So I think you don't need to remand on that because it has to do with the rate caps, and the rate caps aren't here. But as to the other ancillary charges, I think the jurisdiction seems straightforward under 201. On the specific challenges to ancillary charges, briefly, as Judge Pillard pointed out, the reason we created this regulation of ancillary charges was because they were sprouting up like bunnies. And so the only way to regulate that was to set a specific schedule of which ones were allowed and to authorize those. The challenge that this is cycling innovation, I think, fails because both we have that reason for doing this and, second, because, as the Commission points out, providers could always come to the Commission through waiver or rulemaking if they had a new ancillary fee that was actually a valid one. Challenges to the credit and debit processing fees also, I think, fail because numerous commenters in the record said that the rates that we set for these were adequate. Saturas is the only provider that challenged it, but the Commission reasonably determined that it's a certain cost for an outlier and, therefore, were incredible. And that's the way this process generally works. Turning to – Let me go back to the site commission. You're resting on the reconsideration which distinguishes between – accommodation for facilities costs, but not site commissions. I think that's a semantic question, Your Honor. Excuse me? The semantic ambiguity in the term site commission, whether it includes those facilities costs, the defense of site commissions here – Well, I'm just dealing here with the reconsideration. I'm entitled to look ahead because you're making an argument. I'm not disputing that. Because I assumed you were going to make the argument and we tried to take account of that. Well, it doesn't appear that the Commission actually did take account of site commissions unless somewhere in that order it says the facility costs really are site commission costs. I thought they distinguished between them. What the Commission did in that order was say – and it's also in this order – providers make payments to facilities. They're contractual. They're not otherwise obligated. We can get to that. But providers make payments to facilities. But under our rate-making authority under Section 201, our charge is to see if that rate is just and reasonable and we look at the costs. In this order we said there's no real evidence that there's adequate – that there are real costs of facilities that need to be built into this rate. In the order of reconsideration, the court re-evaluated the record and said – I'm sorry, Your Honor. I'm very sorry. The Commission re-evaluated the evidence in the record and determined that there were, in fact, real costs of facilities associated with the provision of inmate calling services and that the rates set were inadequate to allow the compensation for that. So the rates went up by between 20% and 40% as a result of that. The bottom line is some of the costs that had been included in the bundle site commissions were legitimate as far as you're concerned and some were not. Yes, but questions about whether that line was drawn appropriately can't be addressed here because I'm not here. But the bottom line position that the Commission took was that providers and facilities cannot be right that anything goes and the sky's the limit on what costs can be passed on. And the line drawn in the order of reconsideration was based on real costs. I like the Governor's plan. Your Honor, the Commission under Section 201 is authorized to set rates at a reasonable level. And for that, we can look at the costs to provide the consumers to. And the expenses for a county road or even for the basketball court or the facility just aren't reasonably related to the provision of inmate calling services. There might be other expenses that are reasonably related, but those aren't. This order doesn't get into the drawing of those lines, and so it doesn't seem appropriate to do so. Something about the reporting requirements? Sure, Your Honor. The challenges to that we don't think are right because they have not yet been published in the Federal Register. The OMB has, I understand now, approved them. Beyond that, these are conditions... Is there some case law for that that I missed? We cited a case in our brief for the fact that OMB published it. The final agency order? The final order? And they've now been approved? They have been approved, but they have not been published in the Federal Register. But in terms of the merits of the challenges... Is that your best shot, that it wasn't published? I'd rather depend on the merits, Your Honor. The challenge to video visitation... The reporting requirements about video visitation... Do you know whether or not they published this before we move off that way? I do not know, Your Honor. My understanding is they have not been sent to the Federal Register. The requirements about video visitation... Wait a minute, I'm confused. We're talking about part of the regulations that haven't been sent to the Federal Register? The reporting requirements are subject to the Paperwork Reduction Act and therefore do not become final regulations absent OMB approval. So in independent agencies, the rest of the regulation becomes the final regulation that can be challenged. That part is not actually final until published in the Federal Register. It's a weirdness of the Paperwork Reduction Act... When was it absent? This is before us. What the cases have suggested is that the courts hold challenges to those aspects of orders in advance. The cases? The case. Yeah, the case. Sorry, I don't have the site. I think it is in practice. How did I guess that? But on the merits of the challenge... Well, why do you go to the merits if it's not before us? Because I believe Judge Edwards was asking me to get to the merits. I guess what you're saying is it's not a final order. It has not been published in the Federal Register. It hasn't gotten OMB approval. What are you relying on, OMB approval? It has gotten OMB approval but it has not been published in the Federal Register. I don't believe the case law...  I don't want to speculate on that, Your Honor. Well, is that the fact and the fact was true? I believe that the OMB website reflects that it was approved by OMB before the change in administration. Which may be why it's not published yet. I can't speculate on that, Your Honor. I see. No, you don't have to speculate on that. Judge Edwards, did you just want to address the questions of the jurisdictions you're addressing or do you actually want... No, it's okay. It sounds like under CJA, which is the case that you cite, that the critical fact is the OMB approval, not the publication. It's about contingency or not. I don't think that the case addressed specifically that situation. But if there are no further questions, I've asked the Court to affirm the Commission's order insofar as it addresses the ancillary charges and hold the rest in the veins. Thank you, Your Honor. Mr. Schwarzman? Mr. Schwarzman? May I please, Court? This is obviously coming up in an unusual posture and I've got a lot of things that may come up, but I do hope that I can devote a good bit of time to explaining why Section 276 supports the Commission's authority to set rates for both inter and intrastate because among other things it will solve a lot of the problems that the Court has been raising this morning. Counselor, there's no question you're outstanding in this case, but you do not make that argument. Your Honor, we said in our brief that we asked the Court to affirm the Commission's order, and on page 23 of our brief, footnote 106 and page 123, we said that the Commission properly ruled that the Commission could hold that Section 276 allowed the Commission to set ceilings as well as floors and specifically cited to the discussion of site commissions. Under the circumstances here, I think that's more than adequate. I have sat through many presentations from members of this Court at luncheons and at judicial conference where we're told not to file repetitive briefs. So we focused on one issue, as we've been told to do, but we did not abandon anything, and I think our brief is clear on that. I'd like to briefly address site commissions. I hope briefly address site commissions in the context of the fact that I represent people who have been waiting since 2001 for Judge Kessler's primary jurisdiction referral and are experiencing ongoing harm. There's no dispute that there's a failure in the marketplace, and the Commission issued a legal interpretation, not fact-based unlike the discussion of the specific rates, which affects how all future Commission rate-making in this area could proceed and also answers Judge Kessler's questions. And as a result, I think that's right and squarely before the Court as to both inter- and intrastate authority. With respect to Section 276, the intrastate authority, Judge Edwards has endured a lot of paper-on cases. And I'd like to point to... He endured and endured. He loved every one of them. But I'd like to point to trilogies starting with the Illinois case, IPTA, where the Commission said that the Commission could set, that's the terms it used, set rates for local call-in calls. And the Commission set a rate of $0.35. That went back to the Commission. The Commission said, okay, $0.28. That went back to the Court in the MCI case. The Commission and the Court, including Judge Edwards on the panel, said no, that's still too high. It went back to the FCC for a third time, $0.23, and that went back to the Court in the APCC case. Again, Judge Edwards had the pleasure of that one. And what was going on there? Do you think this is a market failure that all these cases are going to Judge Edwards? I'm sure the selection of panels is random, and I know the clerk's office adheres to that. We're all competing equally for it, believe me. The point of these cases is that the Commission was finding that there was excess compensation, that payphone providers were being overcompensated, and that was unfair. They were not being fairly compensated within the meaning of Section 276. So that clearly describes Section 276 and the words fairly compensated as relating to seg rates and dealing with excessive competition. And the second party here in the special case of inmate calling services is the caller. Unlike some of the other payphone cases where there's an ICX, a long-distance company involved, the customer relationship and all of the compensation comes from the caller. And as such, the Commission has talked about in Section 276, I mean the Court and the Commission have talked about Section 276 as requiring fairness to both sides. Let me just raise a question now because Mr. Kellogg, I'm sure, is going to come back with a response of this sort. I thought that was a special zero-plus category of cases where the providers were getting no compensation and the Commission was setting a floor. It was at that early moment, and that's what the battle was. It really did not mean to suggest that the Commission had rate-making authority as a general proposition under 276. At least I don't read those cases that way. Yes, I was on them, and that's not the way I read them. Going back to an earlier statute, the Commission and Congress have always considered inmate calling to be different. It was exempted from the so-called taxidermy statute in 91 or the implementation of that. And the Commission dealt with payphone calls separately precisely because they present different conditions. And the Commission's consideration of the inmate calling services included a request that the Commission establish a $0.90 per call surcharge for inmate calling services. And the Commission said, no, that's excessive. That's overcompensation. That was not a dial-around call. That was a direct call by the inmate. So there is history where the Commission, specifically in the context of inmate calling services, did so. I believe that shows what's involved in this litigation, the 2002 Fifth Order on Remand and Reconsideration. So I do think that in the special case of inmate calling services that the Commission has been involved in setting rates, as the term is understood, and in particular focusing on the question about whether the inmate calling service providers are being fairly compensated or unfairly compensated. And so that's critical to our argument. The other thing that I'd like to talk about is the relationship of Section 201 and 206. Every single case since the 1996 Act has considered inter- and intrastate calls interchangeably under Section 276. None of the cases talk about them differently. And all of them are rooted in and discuss Section 276. We've all read a lot of SEC orders, and at the end they put in a paragraph where they cite every single provision of the Communications Act they can possibly think of as justification for their decision in the concluding paragraph. But in this order, on review here before the Court, the Commission did indeed mention Section 201 on several occasions, but all of its discussion, all of its analysis, all of its consideration of site commissions in particular was in terms of Section 276, not in terms of Section 201. I just don't think you can separate them out. And what does that get you? What that gets me is interstate regulation of inmate calling. It also gets me what Mr. Kellogg alluded to, which is video visitation and so-called VoIP calls, a voice-over Internet credit call. Well, you get interstate regulation under 201. You don't get 276 for interstate. Well, it's unclear whether Section 201 reaches all of the things that the Commission addressed under broader authority of Section 276. And in particular, as I said, the newer technologies are not necessarily ambiguous because the SEC has punted on this, not necessarily covered by Section 201 at all. And in any case, certainly some of those things will not be covered under Section 201, but they are covered under Section 276. And the technology that Petitioner Telmate raises, for example, Telmate's position is that because it is an interconnected VoIP provider... Is it in the ancillary services category? No. It's not? Certainly. I'm scared to get down the rabbit hole of the technology, Your Honor, but I'll try to do this briefly. Some phone calls can be delivered by the Internet. Telmate contends, I think incorrectly, that it thus qualifies as an interconnected VoIP operator and thus is outside the scope of Section 201 and, it argues, Section 276. I think that's wrong. I think the Commission properly said that they are really just using Internet to deliver the service to themselves and that they would come under Section 201 and Section 276 as a result of that. But the point is there is, at the least, ambiguity and perhaps a lack of jurisdiction with respect to those services, which are increasing and represent a substantial portion of the calls. And, of course, intrastate calls represent 80% of the call volume. And to the extent that the authority is asserted under 276, you're saying 276 is broader because? 276 is broader because I think, at the very least, it's similar, but I think it is also different and broader. Fairly compensated can take into account things that would not necessarily be a traditional cost within the meaning of Section 201. But you're quarreling with the petitioner's reading of that statute. Yes. You just take the words fairly compensated and you don't look at what they would argue is the structure of the statute, which was designed, in their view, entirely to protect the provider against the bill and to ensure, let's determine that it had adequate compensation. Something like ensure it had adequate. What's the exact phrase? Do you have it in your mind? Ensure that they're fairly compensated. Ensure that they're fairly compensated. Right. So that's a protective notion rather than language that suggests broad rate regulation authority. Well, the cases I've discussed said that fairly compensated does not mean unfairly overcompensated. Look at the cases you were pointing to. Ninety-six commission order. Once committed market forces establish compensation via contract between the telephone network and the payphone provider, the amount paid pursuant to the contract on the operator's services is beyond the scope of 276. And then in Illinois, we affirmed the agency's imposition of a local coin rate, which would only be the default rate from which the payphone providers and the carriers could negotiate a departure. You've turned the cases around. I mean, we took them as floors, yes, to get this moving. It was not a rate-making provision. Judge Edwards, the key element of that was that the commission was relying on marketplace forces because there were marketplace forces. Section 276A1 has two purposes. One is to ensure that payphone operators, as you probably look at it, to promote competition among payphone providers, and the commission does address that in its order and talks about how rate caps can promote that, but also to promote the widespread availability of payphone services for the general public. And in this context, there's a market- Excuse me, counsel, let me interrupt for a second. What about not an address at all? The letter from the FCC was to abandon the position of this lawyer. You used some phrase which I didn't quite catch at that. If somebody was a what, she'd be a trolley. That's an old expression. If my aunt had wheels, she'd be a trolley. That has to do with the if. I didn't realize I was making a point that would stick with you, so thank you. Well, Judge Silverman, it will not come as a surprise to you that your note is very colorful and one is interested in the kinds of phrases you turn. This is a trolley, a commission where a majority of the present commission has advised you, or you can see from the orders, that the majority of the present commission did not dissent on the authority to regulate site commissions, did not dissent. None of the commissioners have disputed that there's a market failure, and there are two tools to deal with overcharges. One is competition, and that's what the commission tried to rely on in the cases Judge Edwards was talking about. But the second is if there's a market failure, then the only other tool available is rate caps, and as I've been saying, I think that Section 276 does give the commission authority to fulfill those purposes to do that, and with respect to your question. Yeah, but what is the significance of the fact that you have a new commission? As I said, there's no dispute that there's a market failure, so maybe the new commission will want to adopt different rate caps, but they're dealing with market failure. Well, no, wait a minute. The problem is the new commission doesn't think it has authority to reach intrastate rates regulation. With respect, Your Honor, this is your trolley. The commission may, in some future time, after conducting some future rulemaking, decide, after hearing all of the arguments and evidence that would come into that proceeding, to do something that it may do. But you have an order before you that's final, that's been briefed, that's right, that's been contested and defended, and which answers Judge Tesler's referral, to which my clients are entitled to answer and have been waiting since 2001. Mr. Forsman, you don't point, I don't think, to the language in 276B1A that says it gives the commission authority to establish a per-call compensation plan. And that seems to me like that comes quite close to saying that there can be rate caps established in order to assure that each and every call is fairly compensated. Do you think that that tends that way? Yes, yes, yes, I do. And I would also point out that when in the remand of one of Judge Edward's cases, the commission then had to deal with the question, which was left open, about refunds. And there, too, the commission, using equitable principles that probably could not be used under Section 201, dealt with the question about whether or not to order refunds and found that if it ordered refunds, it was going to unfairly compensate the pay home providers. And it did so using equitable principles for both inter- and interstate calls that would not be available under Section 201. What exactly is still before us? We have all these different issues, and the commission has said that it considers a bunch of them moot in their current configuration because of the reconsideration order. Is that also your position? You're trying to defend the authority under 276, but because the site commission payment issue has been shifted, given the 2016 order. The issue on site commissions that's before this court is a specific legal question, not tied into the facts of how the commission assesses site commissions in the process of calculating rates. The legal decision, which really is consonant with long-standing commission precedent, that site commissions come out of the profit. They're not a cost. They've never been a cost. They're not a cost. That is a clear legal determination completely free of any kind of factual issues. Counsel, the counsel for the FCC pointed out in the reconsideration order that the commission considered your point and divided certain costs that had been in the umbrella of site commissions and pulled them out as legitimate charges. The general question of site commissions, I maintain, and the general legal question is probably before this court. He said the problem is a word. If you divide site commissions into legitimate costs and illegitimate costs, then it's improper to refer to site commissions as a whole. That's what the commission points out. But I believe the pure legal question about whether site commissions are costs, if they want to break down— There's the word, site commissions. If you say there's good site commissions, bad site commissions, he doesn't like the term site commissions because he says in the reconsideration order, the FCC looked at part of the charges that went into the term site commission and said they're legitimate, and the court did not. I would say that site commissions not related to costs are not compensable, and that's a legal determination. If the commission adjusted it on reconsideration and said, well, this part could be a cost, that doesn't change the core legal determination that site commissions are not related to costs. Well, the first part of the question is on what is a cost. Right, and that's clear. That's longstanding, going all the way back to the pay phones in the 7-Elevens where the commission said that rents paid to the storekeeper were not a cost. They were part of the share of the profit. So you're saying any aspect of site commissions that aren't supported by evidence of particular costs And the decision before this court doesn't delve into that. I've got a red light on. I think we will. Case is submitted. Oh, wait, we have a reply. We have a reply. I'm just signaling that we will take a break after this case so that people can file it out of the court, but I don't want to cut off the rebuttal. I promise to be brief, Your Honor. I really only want to address one question, which is why the court should vacate this series of orders rather than simply remand. I mean, I think what today has shown is that the FCC has created something of a mess. They started with a 2013 order. We got most of that or a significant portion stayed. Before we had a chance to get our opportunity to argue on the merits, they issued a notice saying that they were going to reconsider it and go to a market-based system and eliminate site commissions. They then didn't do that after the case was held in abeyance for a considerable amount of time. They issued a 2015 order, which we got stayed, and then they tried to clarify that, in fact, the rates from the 2013 order now apply to intrastate as well as intrastate costs. That got stayed. Then they issued the reconsideration order, and that got stayed. You actually suggested that we hold the case in abeyance with a requirement that the FCC respond within, I think, I remember, 60 days. Well, that was... Wouldn't that, if we did... That was if the FCC was going to indicate that they were prepared to issue a new NPRM and reconsider the existing orders. I haven't heard that today. The case is ripe for decision. We've been uncertain about that yet. Can't we assume that with the new commission, which are the dissented from... I think the proper way to propel that to occur is by vacating... If we had done exactly what you wanted to do, we would have... Correct. We would have... Everybody would not be here today. If we had done exactly what you wanted to do, we would have essentially remanded without vacating. Well, you would have held in abeyance. Same thing. But if the FCC, of course, it's not... In the meantime, the rule would have been in effect. I would suggest that whatever the court does, we need pretty strict deadlines. Uncertainty is very harmful to our business, and we think that this is a classic case for a vacater so that the FCC can come back with an order that it's prepared to actually defend. Mr. Collins, you mentioned lower competition. Is there an entirely different approach that the FCC could have taken to actually support competitive provision of services where people in these facilities could choose among different services? They have considered that. It's very complicated in a prison environment because they very much want to strictly control the access and use of pay funds. They considered that. Our solution to that was, and we told them, to get rid of commissions and have people compete with bids on cost and service. And therefore, that will drive rates to cost and make sure that they're getting the services and security features. You are not an advocate of site commissions. You just don't want to be squeezed if you have to pay them. I've come not to praise site commissions. See if we have the authority to bury them. All right. Thank you very much. Came to submit it. We will now take a brief recess.
judges: Pillard, Edwards, Silberman